United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIRA JACKMON,<br><br>        Plaintiff,<br><br>   v.<br><br>AMERICA'S SERVICING COMPANY, et al.,<br><br>        Defendants.<br>_____/ | No. C 11-03884 CRB<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |

    Plaintiff Amira Jackmon filed suit in this mortgage case on August 8, 2011, setting forth state law claims related to an alleged wrongful foreclosure that took place in late May. On August 11, 2011 this Court granted a Temporary Restraining Order and Order to Show Cause Why a Motion for Preliminary Injunction Should Not Issue. Dkt. 13. The Court held a hearing on August 18, 2011. For the reasons set forth below, the preliminary injunction is GRANTED. In order for the injunction to remain in effect, Plaintiff must post a bond of the amount the loan is in arrearage and make monthly security payments, as described below.

**I.    FACTUAL BACKGROUND**

    Plaintiff Amira Jackmon purchased 1220 Dwight Way in Berkeley, County of Alameda, State of California, bearing Assessor's Parcel Number 054-1782-025, on or about January 26, 2005. Compl. (dkt 1) ¶ 17. On the same date Plaintiff executed a promissory note in favor of Metrocities Mortgage LLC DBA No Red Tape Mortgage ("Metrocities Mortgage") secured by a Deed of Trust. Compl. ¶¶ 18-19.

1  Due to financial difficulties stemming from losing her job, Plaintiff approached
2 America's Servicing Company (ASC), the servicer of her mortgage, in August 2009 to
3 inquire about a modification of her mortgage. Compl. ¶ 23. Plaintiff then submitted
4 documentation to ASC to qualify for the Home Affordable Modification Program (HAMP).
5 Id. She began making modified payments under the terms set by ASC ("Forbearance
6 Agreement"). Id. The documentation provided by ASC stated, "At first, you will make new,
7 affordable monthly payments on your mortgage loan during the trial period. If you make
8 those payments successfully and fulfill all the trial period conditions, we will permanently
9 modify your mortgage loan." Plaintiff Decl. (dkt. 10) Exh. A at 1 (emphasis added).

10  Plaintiff states she made the trial payments and fulfilled the requirements of the trial
11 period, but that when she contacted ASC to inquire about receiving a written copy of the
12 final modification agreement, agents and/or employees of ASC never provided a copy of the
13 agreement. Compl. ¶ 24. During this period she made four more payments pursuant to the
14 terms of the trial period agreement. Id. On or about May 1, 2010, Plaintiff was informed by
15 ASC that she did not qualify for HAMP. Compl. ¶ 25.

16  On August 25, 2010, Plaintiff received a Notice of Default and Election to Sell Under
17 Deed of Trust. Compl. ¶ 25. On September 9, 2010, Stephanie Goble, in her purported
18 capacity as Assistant Secretary for "Mortgage Electronic Registration Systems, Inc., as
19 nominee for Metrocities Mortgage LLC DBA No Red Tape Mortgage, LLC" executed a
20 purported "Assignment of Deed of Trust to U.S. Bank National Association, as Trustee for
21 GSR Mortgage Loan trust 2005-AR3." Compl. ¶ 27. On September 20, 2010, China Brown,
22 VP of Loan Documentation for Wells Fargo, in her alleged capacity as "Attorney in Fact for
23 U.S. Bank National Association," executed a "Substitution of Trustee" purporting to
24 substitute NDEx West as trustee for the original trustee, Fidelity National Loan Portfolio
25 Solutions. Compl. ¶ 31.

26  On December 7, 2010 a Notice of Trustee's Sale was filed, noticing a sale on
27 December 23, 2010. Compl. ¶ 32. On December 17, 2010 Plaintiff filed bankruptcy to
28 forestall the foreclosure sale and attempt to come to an agreement with the lender regarding

2

the mortgage, but no agreement was reached. Compl. ¶ 33. The Trustee's Sale for the Property took place on May 27, 2011, following which a "trustee's Deed Upon Sale" was recorded purporting to grant the property to U.S. Bank, for payment of the amount of $350,000. Compl. ¶ 34. On August 5, 2011, agents for U.S. Bank posted a "Three Day Notice to Quit" on the front door of the Property. Compl. ¶ 35.

On August 8, 2011, Plaintiff filed her complaint setting forth state law claims related to the alleged wrongful foreclosure, along with a motion for a temporary restraining order and an order to show cause why a preliminary injunction should not issue. Dkt. 2. On August 9, 2011, the Court ordered Plaintiff to file supplemental materials to support her motion (dkt. 8), which she did on August 9, 2011 (dkt. 10). These materials appear to demonstrate an agreement to modify the loan, and thus, the Court issued the TRO and OSC on August 11, 2011. Dkt. 13. On August 19, 2011, the Court held a hearing on the motion for preliminary injunction. Dkt. 18.

## II.  LEGAL STANDARD

A plaintiff seeking a Preliminary Injunction "'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008)).

The Ninth Circuit continues to apply a "sliding scale" approach to the Winter factors. Thus, "A preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Alliance for the Wild Rockies, 632 F.3d at 1134-35. "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury at that the injunction is in the public interest." Id. at 1135.

### III. DISCUSSION

#### A. Jurisdiction

U.S. Bank challenges the existence of diversity jurisdiction in its Opposition because Plaintiff states in her Complaint that "for the purposes of venue, the Defendants, and each of them are deemed to reside in this judicial district." Compl. ¶ 16 (emphasis added). Corporate residency for the purposes of venue is not the same as domicile for the purposes of diversity jurisdiction. For purposes of diversity jurisdiction, a corporation is a citizen of ("domiciled" in) both the state(s) in which it was incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332. For venue purposes, a corporation generally is a resident of any judicial district in which it is subject to personal jurisdiction when the action is commenced. 28 U.S.C. § 1391(c). The terms are not interchangeable. Thus, this argument is unavailing.

U.S. Bank also argues that the amount-in-controversy allegation is insufficient, but since Plaintiff alleges that the "amount in controversy exceeds $75,000, exclusive of interest and costs," Compl. ¶ 14, this argument is unavailing as well. 28 U.S.C. § 1332(a).

#### B. The Anti-Injunction Act

The Anti-Injunction Act, 28 U.S.C. § 2283, does not "not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted." Dombrowski v. Pfister, 380 U.S. 479, 484 n.2 (1965); see also Union Oil Co. v. Minier, 437 F.2d 408, 411 (9th Cir. 1970) (same). As Defendant U.S. Bank states in its Opposition that it has not yet filed any state court unlawful detainer proceedings, U.S. Bank Opp. at 5 (dkt. 14), the Anti-Injunction Act does not apply as a bar to this Court's action.

#### C. There are Serious Questions Going to the Merits

Plaintiff alleges a breach of agreement in her statements that she was (1) sent the Forbearance Agreement stating her loan would be modified, (2) she accepted this agreement, (3) she performed under the terms of the agreement, and (4) that Defendants failed to modify

4

1  the loan.[1]  Compl. ¶¶ 2-3, 24.  In addition, Plaintiff alleges the Defendants knew or should
2  have known they had no plans to modify the loan.  Id.

3  ASC provided documents directly to Plaintiff that state a commitment to modify to the
4  loan: "If you make those payments successfully and fulfill all trial period conditions, we will
5  permanently modify your mortgage loan."  Decl. Exh. A at 1 (emphasis added).  Defendants'
6  arguments regarding the problem with third party beneficiary claims under HAMP are
7  inapplicable because Plaintiff need not rely on the third party beneficiary theory.  Plaintiff
8  provides some evidence of a direct contract between ASC and herself in the documents
9  attached to her declaration – ASC itself states in that document that it will modify the loan if
10 the conditions are met.

11 Additionally, in her Declaration, Plaintiff includes a copy of the document titled
12 "Home Affordable Loan Modification Program Loan Trial Period (Step One of Two-Step
13 Documentation Process)."  Decl. Exh. B at 8.  Page one of this document states "If I am in
14 compliance with this Loan Trial Period and my representations in Section 1 continue to be
15 true in all material respects, then the Lender will provide me with a Loan Modification
16 Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on
17 the Property, and (2) the Note secured by the Mortgage." (emphasis added).  This appears to
18 state the Loan will be modified if certain conditions are met (conditions Plaintiff alleges she
19 met).  Thus, there are serious questions going to the merits of whether Defendants breached
20 the Forbearance Agreement.[2]

---

[1] Plaintiff's allegations on this point are not a model of clarity, but given the Court's duty to liberally construe the pleadings of pro se litigants, they are sufficient to raise a serious question about the merits.  Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001).

[2] Plaintiff also alleges (1) wrongful foreclosure, (2) fraud, (3) quiet title, (4) violation of the Rosenthal Fair Debt Collection Practices Act, (4) Section 17200 Unfair business practices, and (5) declaratory relief based upon her allegations of improprieties in the foreclosure process, including actions by those not authorized to act on behalf of the mortgage holder.  As there are serious questions regarding the agreement to modify the loan sufficient to support the preliminary injunction, the Court will not address these claims in detail at this time.

5

**D. Irreparable Harm**

In granting the TRO, the Court held that Plaintiff would suffer irreparable harm if she is evicted from her house, assuming, as alleged, that it was wrongfully foreclosed on due to a breach of the agreement to modify the loan. Dkt. 13. It is undisputed that plaintiffs are harmed if they are evicted from their homes or undergo a foreclosure sale. Wadhwa v. Aurora Loan Services, LLC, 2011 WL 2681483, at *2 (E.D. Cal. July 8, 2011); Castillo v. Skoba, 2010 WL 3986953, at *4 (S.D. Cal. Oct. 10, 2010) ("It is clear that Plaintiff will suffer irreparable harm if his residence is sold."). In addition, this harm is imminent. Defendants stated in their Opposition that they are in the process of preparing the eviction complaint. U.S. Bank Opp. at 2. Plaintiff will suffer irreparable harm if the eviction proceedings are commenced.

**E. Balance of the Hardships**

The balance of the hardships tips sharply in Plaintiff's favor. Plaintiff will suffer irreparable harm from eviction. Wadhwa, 2010 WL 2681483, at *2. This harm greatly outweighs the purely financial harm U.S. Bank – as a trust that has no intention of occupying the property as a primary residence – would suffer from a delay in ability to vacate and presumably re-sell the property. In addition, as one unit of the home is occupied by a tenant, Berkeley rent laws will prevent U.S. Bank from evicting these tenants except for good cause, and thus, it would not be able to sell the Property to any third party prior to expiration of the current tenant's lease term anyway. Berkeley Municipal Code § 13.176.130. Finally, Plaintiff will be required to post a bond of the amount due and continue to make such payments as required under the Forbearance Agreement, mitigating Defendants' purely financial harm. Thus, the balance of the hardships tips sharply in Plaintiff's favor.

**F. Public Interest**

"The public interest is served by affording homeowners the opportunity to pursue facially valid claims before their homes are sold." Castillo, 2010 WL 3986953, at *2 (citing Diamond v. One West Bank, No. 09-1598, 2010 WL 1742536, at *14 (D. Ariz. Apr. 29, 2010)). Here, while the foreclosure sale has already taken place, if it was wrongful because

of a breach of the loan modification agreement, the rationale of these cases applies to eviction proceedings. Injunctive relief is also in the public interest when loan modification proceedings might have been in process during a foreclosure action. Wadhwa, 2011 WL 2681483, at *5.

## IV.   CONCLUSION

For the reasons stated above, this Court GRANTS Jackmon's motion for a preliminary injunction. The Court, hereby ORDERS as follows:

- Defendants are enjoined from evicting Plaintiff from the property located at 1220 Dwight Way, Berkeley, County of Alameda, State of California, bearing Assessor's Parcel Number 054-1782-025 or from taking any other action with respect to ownership and possession of the property.

- Plaintiff shall post a bond of all past payments (in the amount agreed to in the modification) due on the property to date by 4:00 p.m. on August, 24, 2011, minus the $1,000 she has already posted.[3] The bond shall be filed with the Clerk's Office and be deposited into the registry of the Court. If said bond is not posted by the aforementioned date and time, this Order shall be dissolved.

- In order for the injunction to remain in effect, every month (on the fifteenth of the month or the first business day after if the fifteenth falls on a weekend or court holiday), Plaintiff must deposit with the Clerk's Office payments in cash or certified check of $2,648.[4] Each payment must identify this case. If Plaintiff fails to post the security within the required time, Defendants may file a notice notifying the Court of Plaintiff's failure to comply.

///

///

---

[3] Plaintiff may submit with this bond payment a statement detailing the determination of the amount in arrearage. The Court will entertain motions to adjust this bond amount if it does not accurately reflect the amount in arrearage.

[4] This amount represents the amount agreed upon in the forbearance agreement. The Court will entertain motions to adjust the security payment if $2,648 does not accurately reflect the modified payments.

7

• Plaintiff may file an amended Complaint by Friday, September 23, 2011.

**IT IS SO ORDERED.**

Dated: August 22, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE